No. 8711.

WAYNE, UNION AND STATE LINE TURNPIKE COMPANY *v.* MOORE.

GRAVEL ROAD.—*Turnpike.*—*Tolls.*—Under the general statute providing for the construction of macadamized, gravel and plank roads, it is not necessary, to warrant the collection of tolls, that the "hard and even surface" required by section 3627, R. S. 1881, should be wide enough for vehicles to pass each other thereon.

INSTRUCTIONS.—*Practice.*—*Harmless Error.*—Instructions should be pertinent to the issues made by the pleadings, but an error in this respect may sometimes be harmless.

From the Wayne Circuit Court.

*W. A. Bickle,* for appellant.

*H. U. Johnson* and *T. J. Study,* for appellee.

FRANKLIN, C.—This is an action by appellant against appellee to recover tolls for travelling over its road.

The error assigned by appellant is the overruling of its motion for a new trial.

Appellee has assigned a cross error upon the overruling of his demurrer to the complaint.

The questions presented under the motion for a new trial arise upon the instructions of the court to the jury.

These instructions are very voluminous, and twenty-four in number. The 11th, 13th, 18th, 20th, 21st and 24th are specially complained of.

In order to understand the application of these instructions, the evidence not being in the record, it is necessary to state the issues.

There was an answer filed in three paragraphs: 1st. A denial; 2d. The road was out of repair; 3d. *Nul tiel* corporation. And a reply in denial. The questions discussed arise under the second issue. And the second paragraph of the answer contained the following specifications of want of repair in the road: "That during the whole of said period and time said road was not smooth, nor was the surface hard and

Wayne, Union and State Line Turnpike Company v. Moore.

even, nor was said road properly covered with stone or gravel or any other hard substance, nor was the track thereof eight and a half feet wide, nor was the covering six inches thick; that the road was in many places so narrow that it was impossible for persons travelling along the same with vehicles to pass each other; that the road-bed was worn out, and the bridges and culverts decayed and dangerous; that the grade was uneven, and that it was permitted to remain so out of repair during all of the time for which appellant claimed toll, and for a much longer period than was necessary to put the same in repair with a reasonable force."

Under this issue, the court, in instruction numbered 9, stated to the jury the substance of section 3 of the gravel road law, 1 R. S. 1876, p. 654, which reads as follows:

" The directors may determine the particular manner of construction so as to secure and maintain a smooth and permanent road, the track of which shall be made either of plank, stone, gravel, or other hard material, or in such proportions of either as the directors may deem expedient, so that the same shall form a hard and even surface."

Instruction numbered 11 was based upon the foregoing section, and reads as follows:

" This section contemplates the practicability of so constructing a road of plank, stone, gravel, or other hard material, so that the surface shall remain permanently hard and even, unaffected in any considerable degree by wet weather or the action of the frost."

Instruction 12, immediately succeeding, ought to be considered in connection therewith; it reads as follows:

" Absolute evenness or hardness is not required; slight inequalities of surface, or a surface that would admit of the formation of a thin layer of slush or mud upon a comparatively hard and smooth formation after the falling rain, or the melting of snow, or a thaw succeeding freezing weather, would not, under said section, be deemed faulty construction."

Taking the two instructions together, we think they furnish a fair exposition of the meaning of the statute upon the subject of the construction of gravel roads. But in this case there is no complaint of defective construction of the road; the appellee only charges a failure to keep it in good repair. However well the road may have been constructed, the statute requires that it should be maintained in a reasonably good condition in order to collect tolls for the use of it. The instruction should have followed the complaint and applied to repairs instead of construction.

We see no reasonable objection to the 18th instruction, except that it also applied to the construction, as well as to repairs, which additional application is, perhaps, harmless.

The 20th instruction reads as follows: "Macadamized, plank or gravel roads are not properly constructed unless they have a hard and even surface of sufficient width for one vehicle to pass another without delay or hindrance, and if a road is so constructed that one traveller in a vehicle can not pass another vehicle without hindrance or delay, tolls can not be exacted on such road until the defect is remedied."

This instruction is also applied to the construction of the road, and requires a degree of perfection not required by the statute. In order to collect tolls, the statute does not require that a gravel road should be constructed and maintained with a double track of hard and even surface, so that vehicles could pass upon the hard and even surface without momentary hindrance or delay. Our Legislature has fixed the minimum width of a gravel road upon which tolls may be legally collected at eight and one-half feet. 1 R. S. 1876, p. 665, sec. 1. And the courts will take judicial notice that ordinary vehicles can not pass each other, without hindrance or delay, within that distance, any easier than trains could pass each other upon a single track railroad without the use of switches.

For authority that single track gravel roads, of not less than eight and one-half feet in width, can be used, and for

the use of which tolls can be legally collected, see the case of Neff v. Mooresville, etc., Gravel Road Co., 66 Ind. 279.

The 21st instruction is upon the same subject and applies to repairs, and reads as follows:

"21st. If a turnpike is constructed of sufficient width for travellers in vehicles to pass without hindrance or delay, and it thereafter is suffered to become so narrow at one or more places that a traveller in a vehicle could not pass another vehicle without hindrance or delay, and is suffered to remain in such condition for a longer period of time than would be required to make the necessary repairs of such places with a reasonable force, the season of the year and other equitable circumstances considered, toll could not be collected for the use of such road, at such places, while the same shall remain in such condition."

This instruction requires the repairs to be made to the extent of furnishing a double track, of hard and even surface, throughout the entire length of the road; which we do not think is required or contemplated by the provisions of our statute.

While a double track of hard and even surface would certainly make a better road than a single track, still it is equally certain that it is better for travellers to undergo the slight inconvenience of momentary hindrance and delay in passing each other, and have a good solid single track road to travel on, than to trudge through the deep slush and mud all the way.

The cause appears to have been tried upon the theory, and the instructions based upon the fact, that the corporation was organized and operating under the general gravel road law of the State, and not under any special charter requiring the width of a double track.

In the instruction numbered 8, the court instructed the jury that the general gravel road law passed in 1852 governed the case.

The 9th instruction copied the 3d section thereof, and the instructions complained of are based upon the same fact;

thus rebutting any presumption, by showing the fact to be otherwise, that the corporation was organized under some special charter requiring a double track, and that evidence might have been given making instructions numbered 20 and 21 applicable thereto.

We must conclude that the corporation was organized and acting under the general law and not a special charter. And under the general law, no state of the evidence could have existed that would make these instructions correct and applicable to the case.

We think the court erred in giving instructions numbered 20 and 21, which error will require a reversal of the judgment, and render it unnecessary to extend this opinion by any further examination of the instructions.

The court below erred in overruling the motion for a new trial.

. Upon the cross assignment of errors by appellee, we find no error in overruling the demurrer to the complaint.

The judgment below ought to be reversed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment of the court below be and the same is in all things reversed, at appellee's costs, and that the cause be remanded with instructions to the court below to sustain the appellant's motion for a new trial, and for further proceedings in accordance with this opinion.